IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LEKENDRIC HALL,

      Petitioner,

v.                                                    Case No. 4:15cv559-WS/CAS

JULIE JONES, SECRETARY,
FLORIDA DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

## REPORT AND RECOMMENDATION

On November 13, 2015, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On October 12, 2016, respondent filed an answer with exhibits. ECF No. 19. On January 13, 2017, petitioner filed a reply. ECF No. 25.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and the § 2254 petition should be denied.

## State Court Proceedings and Direct Appeal

By amended information filed November 13, 2012, the State of Florida charged Petitioner Lekendric R. Hall in the Circuit Court of the Second Judicial Circuit, Leon County, Florida, with one count of battery on a law enforcement officer, in violation of section 784.07(2)(b), Florida Statutes, one count of resisting an officer with violence, in violation of section 843.01, Florida Statutes, and one count of battery, in violation of 784.03(1)(a)(1), Florida Statutes, in connection with events that occurred on or about June 28, 2012.  Ex. A at 8.[1]  Hall entered a plea of not guilty and proceeded to trial.  *Id*. at 14.

On or about June 28, 2012, Hall went to the Office of Detention Alternative and Intervention.  Ex. A at 126.  The Office of Detention Alternative and Intervention staff became aware that Hall had an active capias warrant for his arrest and contacted the Leon County Sheriff's Office.  *Id*. at 128.  Officer Leon testified that he arrived at the center in response to this call.  *Id*. at 166.  Officer Leon approached Hall and stated

---

[1] Hereinafter, all citations to the state court record, "Ex. – ," refer to exhibits submitted with Respondent's answer, ECF No. 19.

Case No. 4:15cv559-WS/CAS

that he was there to execute a warrant for Hall's arrest. *Id*. at 169. Hall stood up and put his hands behind his back. *Id*. Officer Leon then reached for Hall's hands and took out a pair of handcuffs, at which point Hall "turned and pushed [Officer Leon] away" and "knocked [Officer Leon's] hands off him and shoved in an attempt to escape the building." *Id*. at 170. This was corroborated by another witness, a facility employee, who testified Hall pushed "Officer Leon out [of] the way" and "into the wall." *Id*. at 136. Officer Leon testified that he was knocked "off balance" but was able to grab and maintain hold of Hall's shirt; Officer Leon and Hall then "got in a tussle," and at one point Officer Leon lost his balance and fell down. *Id*. at 170.

Officer Leon further testified that two facility employees struggled with Hall as he attempted to escape out the door, and that Hall was "swinging and [flailing] around the whole time." *Id*. at 181. Officer Leon pulled out his taser, and Hall "kicked or hit [his] hand," causing it to fire and strike both Officer Leon himself and Hall. *Id*. at 173-74.

The court gave the following jury instruction at trial regarding the charge of resisting an officer with violence:

> THE COURT: . . . To prove the crime resisting an officer with violence under Count II, the State must prove the following four elements beyond a reasonable doubt: One, Lekendric Hall – that should be Hall there – knowingly and willfully resisted,

obstructed, or opposed Antonio Leon by offering violence or by doing violence to him; at the time Antonio Leon was engaged in lawful execution of a legal duty; three, at the time Antonio Leon was an officer; four, at the time Lekendric Hall knew Antonio Leon was an officer.

Ex. A at 212.

During jury deliberations the jury submitted a question regarding the definition of "violence" as reflected in the record:

> THE COURT: . . . We've received a question from the jury.  I assume a copy of it was given to each of you.
>
> MR. WARD: Yes, sir.
>
> MR. HUNTER: Yes, sir.
>
> THE COURT: All right.  The question from the jury, for the record, "Please give us the legal definition of violence."  I've proposed – or I've written a proposal of how to respond to that.  Let me give you my proposal and then I'll hear from ya'll: "Dear jurors, there is no 'legal definition' of violence.  The term violence as used in the jury instructions should be construed or defined as you would in your normal life.  There is no special definition of violence as a legal term.  In other words, you should use your common sense in defining the term violence."  I'll hear from ya'll if you have a better idea or have some objection.
>
> MR. WARD: No objection.
>
> MR. HUNTER: No objection.  I'm fine with that.
>
> THE COURT: All right.  I will give that to them.

*Id*. at 237.

On November 16, 2012, the jury found Hall guilty of resisting an officer with violence, and not guilty of battery on a law enforcement officer or battery.  Ex. A at 24-25.  On December 5, 2012, the state trial court

sentenced Hall to five years incarceration with jail credit for 161 days.  On December 10, 2012, Hall appealed his conviction and sentence to the First District Court of Appeal (First DCA) (Case No. 1D12-5880).  *Id*. at 39.  On August 2, 2012, the First DCA issued an opinion affirming the conviction and sentence, per curiam.  Ex. D.  On August 28, 2013, the First DCA issued the mandate.  Ex. E.

## Post-Conviction Proceedings

On August 15, 2014, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. F at 1-16. Petitioner raised five grounds as listed:

1. Trial counsel rendered ineffective assistance [of] counsel where he failed to object to the court's statement that there is no legal definition of "violence" [when] asked by the jury during deliberation instructions.

2. Trial counsel failed to impeach witness on conflicting statements.

3. Counsel was ineffective for failure to fully investigate probable cause affidavit pertaining to the validity of arrest warrant legally issued by judge.

4. Counsel was ineffective for failure to depo[se] lab technician who was listed as category [A] witness for State.

5. Trial counsel was ineffective and prejudice[d] the Defendant in every ground listed throughout this motion.  Moreover, Defendant has identified an accumulation of errors and cruel and unusual

punishment of the Fourteenth Amendment violation of
due process.

As to the first ground, Petitioner cited the Black's Law Dictionary
definition of violence ("the use of physical force, usually accompanied by
fury, vehemence, or outrage") as the legal definition that should have been
given to the jury. Ex. F at 2.  Petitioner also cites to section 784.046,
Florida Statutes, which gives the definition for violence in terms of sexual or
dating violence. *Id*.  On September 5, 2014, the state post-conviction court
dismissed Grounds 2-5 as legally insufficient in their substantive
allegations, with sixty days leave to amend. *Id*. at 25.  On April 22, 2015,
the state post-conviction court denied Petitioner's motion on all grounds,
given that Petitioner had not filed an amended motion to correct the
insufficiencies. *Id*. at 26-27.  In denying Ground 1, the state post-conviction
court stated "[a]ssuming that Petitioner's definition would be legally correct,
he cannot show prejudice or deficient performance, as the definition he is
proposing is not dissimilar to the common understanding of violence which
the court advised the jury of." *Id*.

On May 6, 2015, Petitioner appealed this denial (Case No. 1D15-
2155).  On September 28, 2015, the First DCA issued a per curiam

affirmance.  Ex. I.  On October 26, 2015, the First DCA issued the

mandate.  Ex. J.

As indicated above, on November 13, 2015, Hall filed a petition for

writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging one ground:

Trial counsel was ineffective "for [allowing] the court to not instruct the

jurors [on] the legal definition of 'violence' during jury deliberation in which

was requested."  ECF No. 1.

## Standard of Review

Pursuant to 28 U.S.C. § 2254, as amended by the Anti–Terrorism

and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody. Section 2254(d)

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).

The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).  However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

For claims of ineffective assistance of counsel (IAC), the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."

Case No. 4:15cv559-WS/CAS

*Id.* at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Burt v. Titlow, 134 S. Ct. 10, 17 (2013).  Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt."  *Id*. at 13.  The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct.  *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015).  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id*.  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id*.

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b). In order for remedies to be exhausted, the petitioner must have given the state courts an opportunity to address his federal claim. Id.; McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) ("[T]o ensure that state courts have the first opportunity to hear all claims, federal courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998). "[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001).

## Analysis

In his habeas corpus petition, Petitioner alleges that trial counsel was ineffective "for [allowing] the court to not instruct the jurors [on] the legal definition of 'violence' during jury deliberation in which was requested."

ECF No. 1 at 5.  Petitioner states that "[d]uring jury deliberation, the jury wanted to know the legal definition of violence . . . .  Trial counsel did not attempt to find the legal definition of the word violence and allowed the court to tell the jury [there] is no legal definition for violence.  The defendant was found not guilty to Count 1 and 3 but guilty to Count 2."  *Id*.  In his reply, Petitioner cites to section 784.046, Florida Statutes, which gives the definition for "violence" in terms of sexual, dating, or domestic violence crimes.  ECF No. 25 at 7.

Petitioner's federal habeas corpus petition does not reference any federal constitutional or statutory provisions.  Likewise, in Petitioner's state motion for post-conviction relief, Petitioner raised his ineffectiveness claim without any reference to a federal claim.  This ground is unexhausted and procedurally defaulted.  Even if Petitioner's claim contained some federal component, no federal habeas relief is warranted.

To show that counsel was ineffective for failing to object to a jury instruction, Petitioner must show "that the instruction was improper, that a reasonably competent attorney would have objected to the instruction, and the failure to object was prejudicial."  Daugherty v. Dugger, 839 F.2d 1426, 1428 (11th Cir. 1988).  The initial jury instruction given at trial was the same or substantially similar to the standard jury instruction issued by the Florida

Supreme court.[2]  This standard jury instruction does not include a definition of violence.  Counsel cannot be deemed deficient for failing to object to standard jury instructions that have not been invalidated by the Florida Supreme Court.  Elledge v. State, 911 So. 2d 57, 77 (Fla. 2005); Rosado-Rodriguez v. Sec'y, Dep't of Corr., No. 8:15-CV-1260-T-33AEP, 2016 WL 1305152, at *14 (M.D. Fla. Apr. 4, 2016) ("Failure to object to a standard jury instruction is not ineffective assistance of counsel.").  When jurors ask for additional instructions, the trial court has discretion in how to respond; it is appropriate for the court to instruct jurors that they should consider undefined terms as having plain and ordinary meanings, as the trial judge in this case instructed for the term "violence."  McCain v. State, 995 So. 2d 1029, 1033 (Fla. 2d DCA 2008) ("A court is given discretion in responding to jury questions . . . [and] the court here could have defined the terms, referred the jurors to the instructions previously given, or instructed that they should consider undefined terms as having common and ordinary meanings."); Seese v. State, 955 So. 2d 1145, 1149 (Fla. 4th DCA 2007)

---

[2] The Standard Instruction states: "1. (Defendant) knowingly and willfully [resisted] [obstructed] [opposed] (victim) by [offering to do [him] [her] violence] [doing violence to [him] [her]]. 2. At the time, (victim) was engaged in the [execution of legal process] [lawful execution of a legal duty]. 3. At the time, (victim) was [an officer] [a person legally authorized to execute process]. 4. At the time, (Defendant) knew (victim) was [an officer] [a person legally authorized to execute process]."  Fla. Std. Jury Instr. (Crim.) 21.1, Resisting Officer with Violence.

Case No. 4:15cv559-WS/CAS

(finding no fundamental error where the trial judge instructed the jury to consider the word "maliciously," which was undefined both in the statute and its companion Standard Jury Instruction for aggravated stalking, as having its plain and ordinary meaning).  While the word "violence" itself remains undefined in the relevant statute and the standard jury instruction, the Florida Supreme Court already rejected the contention that the complete phrase "offering . . . violence" in the criminal statute is unconstitutionally vague.  Scullock v. State, 377 So. 2d 682, 683 (Fla. 1979) ("By his conduct appellant proposed or threatened to inflict violent harm to the officers, indicating a willingness and having the capacity to achieve that result.  We find that a person of ordinary understanding and intelligence would find this conduct to be prohibited.").  Petitioner does not show that the jury instruction was erroneous under state law, or that a reasonable attorney would have objected to it.

Additionally, the record supports the post-conviction court's finding that Petitioner cannot demonstrate prejudice.  There is no reasonable probability that the outcome of the proceeding would have been different but for counsel's failure to supply a definition for "violence" or to object to the court's instruction that the jurors should use their common understanding of the word.  In denying Petitioner's 3.850 motion, the post-

conviction court noted that the commonly understood meaning of "violence" was no different than the Black's Law Dictionary definition that Petitioner himself had proposed.  The other definition for "violence" provided by Petitioner is a statutory list of other crimes, as used in the section dealing with sexual or dating violence.[3]

The appropriate question on habeas review of state court jury instructions is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Estelle v. McGuire, 502 U.S. 62, 72 (1991).  The allegedly insufficient instruction "may not be judged in artificial isolation," but "must be considered in the context of the instructions as a whole and the trial record."  *Id*.  The instruction to use the common and ordinary meaning of violence did not impair Petitioner's ability to present a defense, and the instructions as a whole covered the essential elements of the crime.  *See, e.g.*, Smith v. Crews, No. 4:12-CV-17-RV/CAS, 2014 WL 5636723, at *7 (N.D. Fla. Sept. 25, 2014), *report and recommendation adopted*, No. 4:12CV17-RV/CAS, 2014 WL 5636834 (N.D. Fla. Nov. 4, 2014) (no habeas corpus relief warranted where the court gave jury instruction on the crime of possession of a firearm by a

---

[3] Defining "violence" as "any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, or false imprisonment, or any criminal offense resulting in physical injury or death, by a person against any other person." § 784.046(1)(a), Fla. Stat.

Case No. 4:15cv559-WS/CAS

convicted felon, but failed to give specific instruction on constructive

possession, because the given instructions covered the essential elements

of the crime and did not impair defendant's ability to present effective

defense).

Two witnesses testified at trial that Petitioner pushed or shoved the

officer away.  Ex. A at 136, 170.  The officer testified that the Petitioner was

struggling by "swinging" and "flailing" the whole time.  *Id*. at 181.  The State

needed to show that Petitioner either did or "offered" to do violence to the

officer; evidence that "[a defendant] struggled . . . and flailed his arms and

legs was sufficient to show that he *offered to do violence* to the [officer]."

Wright v. State, 681 So. 2d 852, 853 (Fla. 5th DCA 1996) (emphasis

added) (conviction for resisting an officer with violence affirmed where

defendant ran away to evade arrest, was taken down by officers, and

contested hitting or kicking officers at trial); *see also* Carter v. State, 6 So.

3d 106, 106 (Fla. 4th DCA 2009) (conviction for resisting an officer with

violence affirmed where defendant struck officer multiple times with his

elbows while attempting to escape from officer by climbing over a fence).

In the context of the record in this case, there is little probability that an

objection to the jury instructions, or any permutation on the definition of

"violence," would have yielded a different outcome.

## <u>Conclusion</u>

Petitioner has not shown the state post-conviction court unreasonably applied <u>Strickland</u> or unreasonably determined the facts in rejecting this claim.  For these reasons, Petitioner's § 2254 petition (ECF No. 1) should be denied.

## <u>Certificate of Appealability</u>

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should

issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that Petitioner's § 2254 petition (ECF No. 1) be **DENIED**. It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on September 28, 2017.

> **S/ Charles A. Stampelos**
> **CHARLES A. STAMPELOS**
> **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or**

**recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.**